UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUDHIR KAPOOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: |
| | ) |
| THE INDIANA UNIVERSITY BOARD | ) **1:06-cv-0819-LJM-WTL** |
| OF TRUSTEES, | ) |
| | ) |
| MEREDITH HULL, individually and | ) |
| in his official capacity as Assistant Dean | ) |
| of the Indiana University School of | ) |
| Medicine, | ) |
| | ) |
| DAVID CRABB, individually and in his | ) |
| official capacity as Chairman of the | ) |
| Department of Medicine, | ) |
| | ) |
| LIA S. LOGIO, individually and in her | ) |
| official capacity as Director of the | ) |
| Department of Medicine Residency | ) |
| Program, | ) |
| | ) |
| and | ) |
| | ) |
| LILLIAN CHARLESTON, | ) |
| individually and in her capacity as | ) |
| Affirmative Action Officer for the | ) |
| Indiana University School of Medicine, | ) |
| | ) |
| Defendants. | ) |

## Complaint and Demand for Jury Trial

### I. Nature of the Case.

1. Sudhir Kapoor brings this action against the Indiana University Board of Trustees;

Meredith Hull, individually and in his official capacity as Assistant Dean of the Indiana

University School of Medicine; David Crabb, individually and in his official capacity as

Chairman of the Department of Medicine; Lia S. Logio, individually and in her official capacity

as Director of the Department of Medicine Residency Program; and Lillian Charleston, individually and in her official capacity as Affirmative Action Officer for the Indiana University School of Medicine, for unlawful discrimination based on race, national origin, and engaging in protected activities in violation of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.,* as amended; for denial of Kapoor's right to make and enforce contracts, in violation of the Civil Rights Act, 42 U.S.C. § 1981; for depriving Kapoor of his constitutionally-protected rights under color of law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983; and for breach of contract in violation of Indiana common law.

## II. Parties

2. Plaintiff Sudhir Kapoor ("Kapoor") is a legal resident of the United States and is within the jurisdiction of the United States as that term is used in Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. § 1981.

3. The Indiana University Board of Trustees ("Trustees") is the governing body of Indiana University ("IU"), a state university chartered by the State of Indiana and located within the boundaries of the Southern District of Indiana, and which operates various schools, including the Indiana University School of Medicine ("the School" or "IUSM").

4. Meredith Hull ("Hull") was, at all times relevant to this action, the Assistant Dean of the Indiana University School of Medicine.

5. David Crabb ("Crabb") was, at all times relevant to this action, the Chairman of the Department of Medicine, an academic department of the IUSM.

6. Lia S. Logio ("Logio") is the Director of the Department of Medicine Residency Program ("the Program" or "Residency Program"), a program administered by the Department of

-2-

Medicine at the IUSM.

7. Lillian Charleston ("Charleston") is the Affirmative Action Officer for the School of Medicine and its associated departments and programs.

### III. Jurisdiction and Venue

8. At all times relevant to this action, and as a part of his medical education, Kapoor was employed through the Residency Program as a medical resident at various hospitals within the geographical boundaries of the Southern District of Indiana with whom the Program contracts to provide residents.

9. At all times relevant to this action, the School, the Department, the Program, Hull, Logio and Charleston maintained their principal offices, and engaged in their principal business within the geographic boundaries of the Southern District of Indiana.

10. The Residency Program is an "employer" as that term is defined in 42 U.S.C. § 2000e(b).

11. The Residency Program is also a "training program" as that term is defined in 42 U.S.C. § 2000e-2(d).

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, 42 U.S.C. §§ 1981 and 1983 and 42 U.S.C. §2000e-5(f)(3).

13. Acts giving rise to this dispute occurred within the geographical bounds of the Southern District of Indiana, thus venue is proper in this Court.

14. Kapoor satisfied his obligation to exhaust administrative remedies by timely filing a charge of discrimination with the Equal Employment Opportunity Commission alleging discrimination on the basis of national origin, receiving a proper notice of right to sue, and timely filing this Complaint.

15.  Kapoor's state law claims arise from the same set of operative facts as his federal claims.

## IV. Factual Allegations

16.  Kapoor's national origin is Indian, and his race is Indian.  He was born and reared in India.

17.  Kapoor is a medical doctor, having obtained Bachelor of Medicine and Bachelor of Surgery degrees from the University College of Medical Sciences in New Delhi, India.

18.  Kapoor became employed by the School of Medicine, through the Program, on July 1, 2003, at the beginning of his second year of residency.

19.  Kapoor was not an at-will employee, having had a written contract of employment.

20.  At all times, Kapoor's work performance met or exceeded the Defendants' legitimate expectations.

21.  Throughout his employment at the Program, Kapoor was subjected to terms and conditions of employment that were different, and were less favorable, than those enjoyed by similarly-situated co-workers whose national origin and/or race was not Indian.

22.  The less favorable terms and conditions of employment included, but were not limited to, accusing Kapoor of sexual harassment on the basis of incidental, non-sexual conduct, failing to conduct an adequate investigation into the allegations of sexual harassment, placing Kapoor on probation, ordering Kapoor to undergo sensitivity training and psychiatric examination, failing to schedule the required training, using Kapoor's failure to attend training as one basis to recommend his dismissal, compiling formal, written "incident reports" documenting minor incidents, and placing those incident reports in Kapoor's permanent file.

23.  On information and belief, similarly-situated residents whose national origin and/or

-4-

race was not Indian were not accused of sexual harassment on the basis of incidental, non-sexual conduct, were afforded an adequate investigation into any allegations which were raised, were not placed on probation, were not ordered to undergo sensitivity training and psychiatric examination, were not denied required training, were not recommended for dismissal, did not have formal, written "incident reports" compiled for minor incidents, and did not have those incident reports placed in their permanent files.

24. Charleston's investigation of the sexual harassment allegations against Kapoor acknowledged that "there were no reports of requests for sexual favors." The investigation also identified no allegations of any sexual conduct whatsoever. Nevertheless, Charleston's report concluded that "it is the opinion of the Affirmative Action Office that inappropriate conduct of a sexual nature occurred."

25. Kapoor made repeated requests, to Charleston and others, to provide him with the names of those making allegations against him, and with the dates and times of the allegations, or any other details which would allow him to respond adequately to the allegations, but despite these repeated requests, Kapoor was never provided adequate information with which he could defend himself or respond to the sexual harassment charges. Moreover, throughout the investigation of the alleged sexual harassment complaints, Kapoor was never afforded an opportunity to interview or cross examine the complainants, or to have an attorney present to advise him with respect to the allegations.

26. Despite the fact that Charleston found no evidence of any sexual conduct whatsoever during her investigation, Logio recommended that Kapoor be placed on probation and ordered him to undergo sensitivity training. She also recommended that the alleged "unprofessional behavior" be recorded in Kapoor's permanent file.

27.  Hull reviewed Charleston's report and endorsed Logio's recommendations.

28.  Neither Hull, Logio, Charleston or any other person at the IUSM, the Department or the Residency Program ever scheduled or arranged for the training Kapoor had been ordered to undergo.

29. On or about January 12, 2005, acting in response to a report compiled by Logio which included among other items the prior unsubstantiated sexual harassment allegations and the results of Charleston's alleged investigation, the IUSM's Resident Evaluation Committee voted to dismiss Kapoor from the program and terminate his employment for "failure to meet performance expectations, failure to achieve competency in the area of professionalism, and no evidence of effective remediation to date."

30.  On or about January 14, 2005, only five months before Kapoor completed his third year of residency, Logio and Crabb notified Kapoor that they were, in fact, recommending his dismissal from the program, and advised Kapoor that his clinical duties would officially end on January 31, 2005.

31.  After his dismissal was recommended, Kapoor requested a meeting with Hull to discuss the matter.  Following that meeting, and despite the fact that there was no substantive evidence of wrongdoing on Kapoor's part, Hull recommended to Brater that Kapoor be dismissed.

32.  Prior to a final decision on his dismissal, Kapoor applied to and was accepted by the residency program at St. Mary's Hospital in Connecticut to complete his third year of residency training.

33.  Before he could be admitted to  the St. Mary's program, Kapoor had to obtain a release from his IU contract.

-6-

34. Kapoor's decision to seek a transfer to another program was not voluntary, but was forced upon him as a result of Defendants' individual and collective unlawful acts.

35. Although Kapoor made repeated requests of Logio to release him from his contract, Logio refused to provide the release unless Kapoor signed a broadly-worded, blanket release waiving any and all claims against the School, the Department, the Program or any of the individuals involved in the decision to recommend Kapoor's termination.

36. As a result of Logio's unreasonable delay in releasing Kapoor from his contract, his starting date at St. Mary's was delayed for more than three months and he was required to repeat his third year of residency in its entirety. Consequently, he was unable to take a position in Missouri as an internist which had already been offered to him.

37. On November 9, 2005, Kapoor filed a charge of discrimination with the Equal Employment Opportunity Commission.

38. Following Kapoor's successful completion of his third year of residency at St. Mary's, he began the process of applying to various states for licenses to practice medicine.

39. Throughout Kapoor's licensing process, Logio continued to unreasonably delay, obstruct and hinder Kapoor's attempts to obtain a license by refusing to respond in a timely manner to requests from various medical licensing organizations for information concerning Kapoor's tenure at the program, and conditioning her responses upon Kapoor's agreement to fulfil certain conditions which, upon information and belief, were not applied to other residents.

40. The Defendants' action were taken under color of state law.

41. The Defendants' actions were intentional, willful, and in flagrant disregard of Kapoor's federally-protected rights.

42. As a result of Defendants' unlawful actions, Kapoor has suffered harm.

## V. Federal Legal Allegations

### Count I: Discrimination on the Basis of National Origin

43. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through forty-two (42) of his Complaint.

44. The Defendants discriminated against Kapoor on the basis of his national origin, Indian, by subjecting him to treatment that was different and less favorable than the treatment afforded similarly situated employees whose national origin is not Indian.

45. The Defendants violated Kapoor's civil rights as protected by Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*

46. The Defendants acted intentionally, willfully, and with knowledge that their actions violated federal law.

47. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of the Defendants' unlawful discriminatory acts.

### Count II: Discrimination on the Basis of Race

48. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through forty-seven (47) of his Complaint.

49. The Defendants discriminated against Kapoor on the basis of his race, Indian, by subjecting him to treatment that was different and less favorable than the treatment afforded similarly situated employees whose race is not Indian.

50. The Defendants violated Kapoor's civil rights as protected by Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*

51. The Defendants acted intentionally, willfully, and with knowledge that their actions

-8-

violated federal law.

52. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of the Defendants' unlawful discriminatory acts.

### Count III:  Discrimination for Engaging in Protected Activity

53. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through fifty-two (52) of his Complaint.

54. After Kapoor filed his EEOC charge of discrimination on November 9, 2005, Logio retaliated against Kapoor by intentionally refusing to respond and/or unreasonably delaying her response, to legitimate requests for information from medical licensing authorities without Kapoor's acquiescence to requirements which were not imposed on similarly-situated residents who had not made charges and/or were not participating in enforcement proceedings.

55. Logio violated Kapoor's civil rights as protected by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a).

56. Logio acted intentionally, willfully, and with knowledge that her actions violated federal law.

57. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of Logio's unlawful discriminatory acts.

### Count IV: Section 1983 Fifth and Fourteen Amendment Violations

58. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through fifty-seven (57) of his Complaint.

59. Kapoor had a property interest in his employment and training at IUSM.

60. Defendants, acting under color of state law, denied Kapoor's due process rights as protected by the Fifth and Fourteenth Amendments of the United States Constitution in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1983.

61. The Defendants acted intentionally, willfully, and with knowledge that their actions violated federal law.

62. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of the Defendants' unlawful discriminatory acts.

### Count V: Section 1981 Violation

63. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through sixty-two (62) of his Complaint.

64. The Defendants discriminated against Kapoor on the basis of race by denying Kapoor's equal right to make and enforce contracts, and subjecting him to penalties that were different than those to which other individuals whose race was not Indian were subjected, in violation of Title VII of the Civil Rights Act, 42 U.S.C § 1981.

65. The Defendants acted intentionally, willfully, and with knowledge that their actions violated federal law.

66. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of the Defendants' unlawful discriminatory acts.

### VI.  State Law Legal Allegations

### Count V: Breach of Contract

67. Kapoor hereby incorporates the allegations contained in rhetorical paragraphs one (1) through sixty-six (66) of his Complaint.

68. Kapoor had a written contract of employment with the Residency Program.

69. Incorporated into that written contract are the policies and procedures set forth in the *Personal Information for House Staff* ("staff rules") provided to Kapoor upon his appointment.

70. The staff rules contain specific provisions pertaining to the meaning of the term sexual harassment, the procedure for handling sexual harassment complaints and specific procedures for grievance, discipline and termination.

71. Defendants breached their contract with Kapoor by failing to adhere to the policies and procedures set forth in the staff rules with respect to the definition of sexual harassment, the sexual harassment complaint procedure and the procedures set forth for grievance, discipline and termination.

72. The Defendants acted intentionally, willfully, and with knowledge that their actions breached Kapoor's written contract of employment.

73. Kapoor has suffered financial harm, emotional distress, damage to his career and professional reputation, lost promotional and career advancement opportunities and other tangible and intangible harm as a result of Defendants' breach.

## VII. Relief Sought

74. Kapoor seeks expungement of all Defendants' references concerning sexual harassment and/or unprofessionalsim from his permanent file, written notification and a complete explanation of the removal to any and all medical licensing authorities with whom Defendants have communicated concerning the Plaintiff.

75. Kapoor seeks an injunction against the Trustees, Hull, Crabb, Logio and Charleston, acting in their official capacities, to enjoin them from further acts of discrimination and/or retaliation against Kapoor.

76. Kapoor seeks payment of all wages, benefits, compensation, and monetary loss

suffered as a result of the unlawful actions of Hull, Crabb, Logio and Charleston, acting in their individual capacities..

77.  Kapoor seeks compensatory damages for the violations of Title VII by Hull, Logio, Crabb and Charleston acting in their individual capacities.

78.  Kapoor seeks punitive damages for the violations of Title VII by Hull Crabb, Logio and Charleston acting in their individual capacities.

79.  Kapoor seeks pre-judgment interest and post-judgment interest on all sums recoverable.

80.  Kapoor seeks payment of his reasonable attorney fees and costs.

81.  Kapoor seeks any and all other relief to which he is entitled, including all other relief deemed just and proper by this court.

### VIII.  Demand for Trial by Jury.

The Plaintiff, Sudhir Kapoor, by counsel, respectfully requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

Kenneth E. Lauter

Jay Meisenhelder

HASKIN LAUTER LARUE & GIBBONS
255 North Alabama Street
Indianapolis, IN 46204
Telephone:     (317) 955-9500
Facsimile:      (317) 955-2570
Email:          klauter@hlllaw.com
                jmeisenhelder@hlllaw.com

Attorneys for Plaintiff

-12-